UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
STEVE YU,
                                    :
            Plaintiff,                   REPORT & RECOMMENDATION
                                    :
      -against-                          07 Civ. 5541 (GBD)(MHD)
                                    :
NEW YORK CITY HOUSING DEVELOPMENT
CORPORATION (HDC), and PELLEGRINO   :
MARICONDA, sued herein in his
Official and Personal Capacity,     :

            Defendants.             :
-----------------------------------x

TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:


      Pro se plaintiff Steve Yu commenced this lawsuit in 2007 under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 et

seq.; the Age Discrimination in Employment Act, 29 U.S.C. § 621 et

seq.; the Employee Retirement Income Security Act of 1974, 29

U.S.C. § 1001 et seq.; and parallel New York State and City

statutes. He has sued his former employer, the New York City

Housing Development Corporation ("HDC"), and his supervisor at HDC,

alleging discrimination on the basis of his race, national origin

and age, as well as retaliation, in the form of job assignments,

denial of promotion and his termination in June 2006. By his

complaint he seeks back pay, front pay, compensation for lost

benefits, compensatory damages and punitive damages.[1]

Following the expiration of the court-ordered deadline to complete discovery, defendants moved to dismiss the complaint in its entirety based upon plaintiff's longstanding failure to comply with a series of discovery orders pertaining principally to the production of documents. Full briefing of that motion was delayed for a period while plaintiff pursued a belated appeal to the District Court from some of those orders insofar as they denied his request for more discovery from defendants. After the affirmance of the challenged orders, we invited plaintiff both to bring himself into compliance with the orders and to respond to defendants' motion. (Order dated Nov. 6, 2008). He subsequently filed opposition papers, newly claiming that he had complied with at least some of the provisions of the discovery orders. Defendants have completed the briefing with a reply declaration of counsel contesting plaintiff's representation that he had complied in any respect.

---

[1] During the course of discovery, plaintiff chose to eschew damages for emotional distress or physical injury, and accordingly was absolved from the requirement that he provide documents pertaining to any psychological, psychiatric or medical history or treatment. (Order dated Apr. 9, 2008).

2

For the reasons that follow, we recommend that defendants' motion be granted in part.

Prior Proceedings

Plaintiff filed his complaint in mid-2007. Following the reference of this case to me to supervise pre-trial proceedings, I conducted a status conference with the parties and issued a case management order, which required completion of discovery by March 31, 2008, the filing of any summary-judgment motions by April 18, 2008 and submission of a joint pretrial order by May 17, 2008. (Order dated Dec. 5, 2007). At a follow-up conference on March 6, 2008 we learned that neither side had complied with each other's pending discovery requests. At the conference we specified inter alia that plaintiff was to respond to defendants' interrogatories and document requests by no later than March 13, 2008, that discovery was to be completed by April 30, 2008, that any summary-judgment motions were to be filed by May 19, 2008 and that the parties were to submit a joint pre-trial order by June 17, 2008. (Order dated Mar. 6, 2008).[2]

_____

[2] At the conference we also took note of plaintiff's professed desire to depose certain employees of HDC and directed him to supply to defendants' attorneys the names of up to ten individuals whom he wished to depose. We also directed the

Because some of the delay in providing documents was attributable to disagreement between the parties on the terms of a confidentiality order, we issued such an order on March 7, 2008. We also then granted a request by plaintiff to extend his time to respond to defendants' interrogatories and produce requested documents to March 26, 2008. (Endorsed Order dated Mar. 17, 2008).

Although the parties exchanged discovery responses on March 26, 2008, another imbroglio ensued because plaintiff had sent his responses by e-mail and in a format that defendants could not access. (Silverberg Decl. at ¶ 7). Upon application by defendants, we directed plaintiff to provide those response to defendants in a readable form. (Endorsed Order dated Mar. 31, 2008). Plaintiff complied by April 1, 2008. (Silverberg Decl. at ¶ 7).

Upon review, however, it turned out that plaintiff's production of documents was seriously deficient. Moreover, during the course of plaintiff's deposition on April 9, 2008, he initially refused to answer questions pertaining to his employment history

---

parties to confer about a schedule to conduct those depositions. (See id.). It appears that plaintiff never actively pursued this matter, at least insofar as he was required to consult with defendants' attorneys about the dates for such depositions. (See Decl. of Dean L. Silverberg, Esq. in Supp. of Defs.' Mot. to Dismiss, executed June 30, 2008, ¶¶ 8-11 & Exs. E, F & G).

and his efforts to obtain a job after his termination by HDC. This stance required defendants' counsel to initiate a telephone conference with the court, which directed plaintiff to answer these questions. Following that directive, Mr. Yu apparently did respond to the questions. (Silverberg Decl. at ¶¶ 12-13 & Ex. C at 42). He again balked, however, when asked to identify his current employer, thus necessitating another phone conference with the court, during which he was ordered to answer the question and warned that further non-compliance with his discovery obligations could trigger dismissal of his complaint, and he again complied with the court's direction to answer the question in issue. (Id. ¶ 14 & Ex. C at 57-58).

The problem with plaintiff's document production proved more intractable. We conducted a conference on May 8, 2008 to address open discovery issues on both sides, including a belated request by plaintiff to extend the April 30 discovery cut-off to permit him to take depositions. At the conclusion of the conference we directed both plaintiff and defendants to submit lists of the discovery that each side contended was still owed by the other side, with both plaintiff and defendants then given a short period to respond to the other side's complaints. (Order dated May 8, 2008). We did not, however, further extend the discovery deadline.

5

Based on the parties' submissions, we issued a Memorandum and Order on May 19, 2008 resolving the various disputes over production of documents and other items. Plaintiff had submitted a list of twenty categories of documents that he was seeking from defendants, and we ruled that, except for two categories for which defendants had agreed to produce documents, the plaintiff's demands either had already been honored to the extent that defendants had such documents or had not been shown to encompass relevant materials. (Memorandum & Order dated May 19, 2008, 1-4).

As for items sought by defendants, these included documents, a laptop and Blackberry that plaintiff had concededly misappropriated from HDC, and answers to certain interrogatories. In substance we granted the entirety of defendants' request to compel. This encompassed the following documents: (1) contemporaneous notes that plaintiff had concededly made concerning his work (which we held were not protected by work-product immunity); (2) documents to which the complaint specifically referred; (3) documents concerning plaintiff's consulting relationship with HDC; (4) documents reflecting plaintiff's claimed damages; (5) documents pertaining to the allegations in his complaint (even if not specifically referenced in that pleading); (6) documents reflecting plaintiff's post-termination job searches,

6

as well as a job-offer letter from an entity known as Graphnet; (7) redacted tax returns and Form 1099s for 2005 through 2007 (the redactions to exclude any non-earned income); and (8) documents relating to the terms of plaintiff's most recent employment. As to each of these categories, we directed that plaintiff produce the requested documents or, if he had no responsive documents for any category, he was to so advise defendants' counsel in writing. (<u>Id.</u> at 5-7).

In addressing defendants' interrogatories, we directed that plaintiff respond fully to a question that asked what property plaintiff had taken from HDC, and, specifically, whether the laptop and Blackberry were the only items that he had purloined. We further ordered him to produce the laptop. We also directed him to provide a full response to an interrogatory that asked for a calculation of his claimed damages. (<u>Id.</u> at 6-7).

Finally, we directed that both sides produce the required further responses to each other within ten days. Thus production was due by May 29, 2008. The only remaining item was the possible reopening of plaintiff's deposition in light of further disclosures that he was required to make. As to that possibility, we specified that defendants would have to seek court permission unless

7

plaintiff consented. (Id. at 7-8).

Defendants provided the additional documents ordered by the court within the allotted time period. (Silverberg Decl. at ¶ 20). Plaintiff failed to do so, and instead filed a motion dated May 29, 2008 asking for reconsideration of our rulings, particularly our denial of most of his discovery requests. ("Motion to Reconsider Judgement" dated May 29, 2008). He did not explain why our earlier rulings were incorrect, nor did he attempt to justify his failure to provide the documents, interrogatory answers and physical items that he had been directed to produce to defendants. By order dated June 12, 2008, we denied plaintiff's motion, noting that he "fails to demonstrate that the court overlooked any facts or legal authority in its prior ruling." (Silverberg Decl., Ex. J).

We conducted another conference with plaintiff and defendants' counsel on June 12, 2008. The purpose of the conference was to address plaintiff's continuing failure to comply with the court's directives to provide the discovery embodied in our May 19, 2008 Memorandum and Order. At the conclusion of the conference we ordered plaintiff to comply fully by no later than June 19, 2008. (Id. at Ex. K).

By letter dated June 20, 2008, defendants' counsel advised the court that plaintiff had still failed to comply with our discovery orders of May 19 and June 12, 2008. Counsel therefore asked for leave to move to dismiss based on this discovery misconduct by plaintiff. (June 20, 2008 letter from Dean L. Silverberg, Esq. to the Court). We endorsed an order that day, stating that "[d]efendants are free to make whatever motion they deem appropriate under the circumstances." (Endorsed Order dated June 20, 2008).

On June 25, 2008 plaintiff filed a set of what he designated "Objections". This apparently untimely filing targeted my rulings of May 19, 2008 insofar as they denied his requests for more discovery from defendants. (Silverberg Decl., Ex. M). He did not specifically object, however, to the rulings that required him to produce documents and other things and to answer certain of defendants' interrogatories.

On June 30, 2008 defendants filed their motion to dismiss, which is premised on Fed. R. Civ. P. 37(b) and 41(b). We initially scheduled opposition papers for August 23, 2008 and reply papers for August 30, 2008. (Order dated July 24, 2008). Plaintiff did not initially respond to the motion, apparently because of the pendency

9

of his Objections, though he did not seek to stay briefing of the motion. Subsequently, in response to a request by defendants, however, we adjourned the deadline for a summary-judgment motion and awaited a decision on Yu's appeal before addressing the sanctions motion. (Endorsed Order dated July 2, 2008).

On November 6, 2008 the District Court issued an order rejecting plaintiff's objections to my prior discovery rulings. In the wake of that decision, we issued a new scheduling order, authorizing plaintiff to serve and file his response to the dismissal motion by December 1, 2008 and defendants to file their reply by December 8, 2008. (Order dated Nov. 10, 2008). In addition, we advised plaintiff that in the interim "he may choose to comply with defendants' discovery demands that are the basis for the pending motion to dismiss in the interim." (Id.). We added the caveat that we would not at that stage suggest to plaintiff whether such a step on his part would "substantially affect the outcome of the [dismissal] motion." (Id.).

Plaintiff filed his opposition to the motion, contending that certain exhibits attached to his papers constituted compliance, or at least partial compliance, with the defendants' outstanding discovery requests. Defendants have replied, noting that the

documents annexed to plaintiff's opposition were not responsive to the discovery demands in question, and that, with the exception of a single 2007 Form 1099, he had not turned over any of the discovery materials targeted by the prior court orders. (Decl. of Dean L. Silverberg, Esq. in Reply to Pl.'s Opp'n and in Further Supp. of Defs.' Mot. to Dismiss, executed Dec. 8, 2008, ¶¶ 9-20).

<u>ANALYSIS</u>

Defendants seek dismissal of the complaint with prejudice. A review of the record, including the exhibits proffered by plaintiff as purported compliance with defendants' document requests and the court's orders, reflects that plaintiff has failed either to provide the documents sought by defendants that the court has ordered him to produce or to respond responsively to the interrogatories that he was ordered to answer. Mr. Yu's persistence in violating both his discovery obligations and the court's orders implicates the court's authority under both Fed. R. Civ. P. 37(b)(2) and 41(b), as well as under Rule 16(f). The court specifically ordered him to produce the documents and answer the interrogatories by May 29, 2008 and then by June 19, 2008, and gave him a last chance to cure his default by December 1, 2008, and he has failed each time to do so.

Under the terms of the cited rules the court has broad authority to impose appropriate remedies both to cure the harm visited on the discovering party and to deter similar refusals by other litigants to comply with the court's scheduling and discovery directives. See, e.g., Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976) (per curiam); Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002); Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 71, 73 (2d Cir. 1988). Rule 37(b)(2) authorizes a range of sanctions, including dismissal, that may be imposed on a party for failing to comply with a court order. Similarly, Rule 41(b) authorizes dismissal for plaintiff's failure to comply with a court order. Dismissal is of course "'a harsh remedy to be utilized only in extreme situations.'" LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 209 (2d Cir. 2001) (quoting Theilmann v. Rutland Hosp., Inc., 455 F.2d 853, 855 (2d Cir. 1972) (per curiam)). Nonetheless, dispositive measures are certainly within the court's arsenal, if needed, to remedy otherwise irremediable prejudice or to address persistent bad-faith pre-trial conduct by a litigant. See, e.g., Friends of Animals, Inc. v. U.S. Surgical Corp., 131 F.3d 332, 334 (2d Cir. 1997); Valentine v. Museum of Modern Art, 29 F.3d 47, 49-50 (2d Cir. 1994) (quoting Bobal v. Renssalaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir. 1990)); Rotblut v. Thaler, 1998 WL

846124, *6 (S.D.N.Y. Dec. 3, 1998).

The pertinent considerations in choosing a sanction under Rule 37(b)(2) include "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party has been warned of the consequences of his non-compliance." Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002) (citing Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 852-54 (2d Cir. 1995)). Additionally, we examine the prejudicial impact of the non-compliance. See, e.g., Martinez v. E&C Painting, Inc., 2008 WL 482869, *4 (S.D.N.Y. Feb. 21, 2008); New Pac. Overseas Group (USA) Inc. v. Excal Int'l Dev. Corp., 2000 WL 97358, *5 (S.D.N.Y. Jan. 27, 2000).

When the court considers dismissal under Rule 41(b), it looks to a parallel set of factors. These include "(1) the duration of the plaintiff's failures, (2) whether plaintiff ha[s] received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) . . . [consideration of] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard, . . . and (5)  . . . the efficacy of lesser

13

sanctions." <u>LeSane</u>, 239 F.3d at 209; <u>Sanders v. John Does</u>, 2008 WL 2117261, *3 (S.D.N.Y. May 15, 2008).

We address these overlapping considerations more or less in order. Having done so, we conclude that preclusive sanctions of a more limited nature than sought by defendants are appropriate.

1. <u>Length of Default & Willfulness</u>

Plaintiff was asked for production of the disputed documents and other items and complete answers to interrogatories in early 2008. He has still not complied. In short, the period of his default is lengthy.

It also bears emphasis that his failure to comply has persisted in the face of a series of court orders requiring that he produce the requested documents and things and provide further interrogatory answers. Furthermore, in dealing with the court at the series of conferences that we called to address this problem, he never suggested that he was unable to comply. In his opposition to the motion he only indicates that he is unable to access certain e-mails regarding his search for a subsequent job, without clarifying whether any other documentation of his job-search

14

efforts exist.  (Pl.'s Opp'n to Defs.' Mot., 3-4). Plainly, then, his refusal to fulfill his discovery obligations must be viewed as willful as well as prolonged.

2. <u>Notice</u>

_____Plaintiff has been on notice that a failure on his part to comply with the discovery rules could trigger sanctions up to and including dismissal of his complaint. He was warned of this potential consequence as early as his deposition, when he refused without basis to answer pertinent questions by defendants' counsel. Although that warning resulted in responsive deposition testimony, it has not yielded more positive results in connection with written discovery.

Then plaintiff was warned at a follow-up conference that his continued non-compliance could trigger a dismissal motion, which the court would entertain, and in late June defendant's counsel sought leave to make such a motion, which we granted. Furthermore, plaintiff had ample time after the filing of that motion to bring himself into compliance, since the motion was not fully briefed until more than five months after its initiation. Moreover, we explicitly invited plaintiff, by way of our November 10, 2008

15

order, to comply with the requirements of the discovery rules and the specifics of our May 19 and June 12 orders, and yet he failed to do so despite being on clear notice that he was facing the potential dismissal of his case.

### 3. Prejudice

The prejudice to defendants from plaintiff's default appears to be substantial. First, the refusal of Mr. Yu to comply has greatly delayed the completion of this case. From such delay we may presume some measure of prejudice. See, e.g., Shannon v. Gen. Elec. Co., 186 F.3d 186, 195 (2d Cir. 1999). Second, and most notably, to the extent that plaintiff has failed to provide documentation of his efforts to find alternative employment and of the terms of his employment relationship with his most recent employer, he has prevented defendants from fully exploring whether he has made reasonable efforts to mitigate his damages following termination and the extent of his economic losses, if any, in the form of potentially recoverable back pay. Third, since he apparently took notes during the period of his employment (Silverberg Decl., Ex C at 18), his failure to turn them over deprives defendants of a potential source of cross-examination of him concerning the events that supposedly exemplified the discriminatory treatment about

16

which he complains.

In sum, defendants are facing significant prejudice from plaintiff's defiance.

4. <u>Calendar Congestion</u>

Although we cannot say that this specific case is a major contributor to the burden of the court's current calendar, there is an institutional problem with letting Mr. Yu thumb his nose at the court and the Federal Rules of Civil Procedure. His defiance of court orders has undercut our ability to ensure the prompt disposition of this case. That is not a trivial matter. The goal of a "just, speedy and inexpensive determination of every action" is stated in Fed. R. Civ. P. 1 and is embodied in the Civil Justice Reform Act of 1990, 28 U.S.C. § 471 <u>et</u> <u>seq.</u>, which requires all federal courts to develop a civil justice expense and delay reduction plan to "ensure just, speedy, and inexpensive resolutions of civil disputes." 28 U.S.C. § 471. In addition, to ensure enforcement of the court's scheduling authority, Rule 16(f) arms the court with the sanctions powers specified in Rule 37(b)(2).

By violating the court's orders requiring him to provide

relevant information to defendants, Mr. Yu has thwarted our ability to manage this litigation in an efficient and economical manner. Were this behavior to be ignored, we would undermine the stated institutional policies and leave to a litigant the choice of whether to comply with court mandates.

5. <u>Alternative Remedies</u>

The remaining, and key, question is whether lesser steps than dismissal of the complaint might be appropriate in these circumstances. Further orders to plaintiff to comply are pointless, because plaintiff has proven himself capable of, and willing to, defy them. Moreover, such an approach, even if coupled with a requirement that he reimburse defendants for their expenses in seeking to enforce their rights under the discovery rules, would leave plaintiff -- even if he finally changed his tack and complied -- in the position of having not only defied the court but substantially delayed the litigation and undermined our ability to control our calendar.

That said, we view it as possible to right the balance of resultant prejudice in large measure by steps short of outright dismissal. In recommending such a more limited set of steps, we

comply with the abiding policy of the federal courts to promote the determination of cases on their merits if possible. See, e.g., Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 174 (2d Cir. 2001); Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995).

The principal harm caused by plaintiff's failure to provide documentation about his job searches and the terms of his post-termination employment was, as noted, to deny the defendants the ability to explore whether he was in a position to claim resultant economic injury and, if so, in what amount. That harm may be remedied by precluding plaintiff from seeking back or front pay at trial, and we so recommend. Although plaintiff had abjured any claim for emotional distress, the proposed preclusion order would still leave him with his claim for denial of a promotion, as well as an apparent subsidiary claim that defendants failed to pay him his salary for the last few weeks that he was employed. (See May 19, 2008 Memorandum & Order at 7 n.1).[3]

---

[3] We note that plaintiff also asserts a purported ERISA claim, which rests on the vague allegation that he did not receive any ERISA benefits after he was hired. (Compl. ¶¶ 194-95). We are not called upon here to determine whether this is a viable claim, but the recommended preclusion order would not affect Yu's ability to pursue such a claim for benefits denied him while he was employed at HDC.

In addition to the preclusion order, we believe that if the case went to trial defendants should be permitted to establish for the triers of fact that plaintiff failed to provide the various categories of documents and other information sought by them and that he violated a series of court orders requiring his production of those items, including the HDC laptop. As an accompaniment to that proof, defendants should be entitled to a jury instruction inviting the jurors, if they saw fit, to view plaintiff's failure to obey these orders as a basis for inferring that the withheld categories of documents were unfavorable to him.

Moreover, since plaintiff has withheld documents called for in defendants' discovery requests, he must be precluded from using any such documents in this case. That limitation will apply to both a forthcoming summary-judgment motion and any trial.

Finally, it is also appropriate to require that plaintiff reimburse defendants for the expenses of their discovery applications and sanctions motion, including reasonable attorneys' fees. That result is justified under Fed. R. Civ. P. 37(b)(2)(C) and 16(f)(2) since defendants, although they may not fully prevail on their sanctions motion, will have substantially prevailed, as they did on their prior applications to compel further discovery

from plaintiff.

We recognize that these proposed steps, if adopted, will largely eviscerate the heart of plaintiff's case. While that is not an inconsiderable consequence, plaintiff has amply justified it.

CONCLUSION

For the reasons stated, we recommend that defendants' motion to dismiss be granted to the extent of precluding plaintiff from seeking or recovering back or front pay, authorizing defendants to establish at trial plaintiff's discovery misconduct and to request an appropriate instruction as to the permissible adverse inferences that the triers of fact may draw from this proof, preventing plaintiff from using any documents sought by defendants in discovery and withheld by plaintiff, and awarding defendants the expenses of their discovery and sanctions applications, including reasonable attorneys' fees.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on

all adversaries, with extra copies to be delivered to the chambers of the Honorable George B. Daniels, Room 630, 500 Pearl Street, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: New York, New York
       February 23, 2010

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

22

Copies of the foregoing Memorandum and Order have been mailed today
to:

Mr. Steve Yu
1025 Esplanade Avenue
Apt. 4G
Bronx, New York 10461

Dean L. Silverberg, Esq.
Anna A. Cohen, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177-1211