Yu v. NYC Housing Development Corporation, *et al.*

**PRO SE OFFICE**

# IN UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

Steve Yu,

              Plaintiff(s),                                07 Civ. 5541(GBD)(MHD)

                                                           <u>AMENDED COMPLAINT</u>

         - against -

                                                           JURY TRIAL DEMANDED

New York City Housing Development Corporation
(HDC), PELLEGRINO MARICONDA, Sued
herein in his Official and Personal Capacity,

              Defendant(s).

-----------------------------------------------------------x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: 5-13-2010

## <u>NATURE OF THE CASE</u>

1. This action is brought for discrimination in employment pursuant to Title VII of the Civil Rights Act 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII") *et seq.,* Age Discrimination in Employment Act, as codified, 29 U.S.C. §§ 621-34 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 99-592, the Civil Rights Act of 1991, Pub. L. No. 102-166) ("ADEA") *et seq.*, The Civil Rights Act of 1991 ("CRA"), as codified, 42 U.S.C. §§ 1981a *et seq.,* The Employee Retirement Income Security Act of 1974 ("ERISA") *et seq.,* The New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296.

## <u>JURISDICTION AND VENUE</u>

2. Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, and 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under New York law.

3. Venue is properly placed in this District in that Defendant has its principle place of business in this District and also the events which gave rise to this action occurred within this District. Additionally, venue is proper pursuant to §7106 of the Unconsolidated Laws of New York in that this judicial district lies wholly or partially within the Port of New York district.

Yu v. NYC Housing Development Corporation, *et al*.

## PROCEDURAL REQUIREMENTS

4.    On or about November 29, 2006, Plaintiff timely filed charges of retaliation, age discrimination and national origin discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). Plaintiff brings this action within ninety (90) days of the receipt of a Notice of Right to Sue, issued by the EEOC on or about March 14, 2007. See Exhibit A.

## PARTIES

5.    Plaintiff, Steve Yu[1] (hereinafter "Plaintiff"), is and was, at all times mentioned herein, a citizen of the United States and a resident of the State of New York.

6.    Plaintiff resides at 1025 Esplanade Ave. Apt. 4G, Bronx, NY 10461. His phone number is (646) 639-3837.

7.    Plaintiff was, at all times mentioned herein, 50 years old in 2006.

8.    Plaintiff, is and was, at all times mentioned herein, of Chinese national origin.

9.    Plaintiff was, at all times mentioned herein, an employee of Defendant New York City Housing Development Corporation[2] (hereinafter, "HDC").

10.    Plaintiff was, at all times mentioned herein, an "employee" within the meaning of the ADEA, Title VII, and NYSHRL.

11.    Upon information and belief, Defendant HDC is and was, at all times mentioned herein, a public benefit corporation of the State of New York, establesied in 1971 under Article XII of the New York Private Housing Finance Law to increase the supply of multi-family housing by providing financing for the construction and preservation of affordable housing through low interest mortgage loans within the

---

[1] Plaintiff earned dual Master Degrees in Computer Engineering in 1992, and Industrial Engineering in 1989, from two of the oldest Engineering Graduate Schools in the Unites States. Plaintiff had had over ten (10) years experience in IT (Information Technology) field from various institutions in the U.S.A, including employed by Oracle Corp. and CitiBank for many years. While employed by Oracle Corp., Plaintiff gained extensive experience as an Oracle DBA.(DataBase Administrator) by serving numerous Oracle Corp. clients, major multinational financial institutions in the United States and around the world, plus mentoring their Oracle DBAs. He was awarded by CitiBank Council for his excellent accomplishment on the IT project which he designed, developed, tested, implemented and managed.

[2] . See Exhibit B, the determination letter from Internal Revenue Service ("IRS"), on January 9, 2007, stated that "We hold the worker to have been an employee of the agency, for services performed in 2005 and 2006.".

Port of New York district. Currently HDC employes approximately 138 individuals.

12. Upon information and belief, Defendant HDC is located at 110 William Street, New York, NY 10038. And its phone number is 212-227-3600. Its web site is at http://www.nychdc.com/.

13. Upon information and belief, Defendant HDC is and was, at all times mentioned herein, an "employer" within the meaning of the ADEA, Title VII and NYSHRL.

14. Upon information and belief, Defendant Pellegrino Mariconda[3] (hereinafter, "Mariconda"), is and was a citizen of the United States and a resides of the State of New Jersey.

15. Upon information and belief, Mariconda is and was at all times mentioned herein an employee of HDC, acting as Chief Information Officer within the HDC.

16. Upon information and belief, Mariconda, at all relevant times herein, was responsible for the supervison of employees within the IT group of the HDC including Plaintiff.

17. Upon information and belief, Mariconda, at all relevant times herein, was Plaintiff's direct supervisor.

18. At all times referred to herein, Mariconda acted under color of the laws, statutes, ordinace, rules, regulations, policies, customs, and usages of the State of New York.

19. That each and all of the acts of Mariconda alleged herein were done in his personal capacity as weel as in his official capacity as Chief Information Officer for the HDC.

# **FACTS**

20. Plaintiff was interviewed on Tuesday, June 21, 2005 for the job, Oracle DBA (DataBase Administrator) in HDC.

21. At the very beginning of the interview, Mariconda introduced the company, HDC, its way of business, its employee's benefits programs, and the requirements and responsibilities of the Oracle DBA position to Plaintiff.

22. Then Plaintiff had technical interviews with Madhavi Kulkarni[4] (hereinafter, "Kulkarni") and Kadirvelu Palaniappan[5] (hereinafter, "Palaniappan"), respectively.

---

[3] Upon information and belief, Mariconda was 30 something years old. He joined the HDC in August 2004 as an assistant manager in the IT group. He was promoted to CIO (Chief Information Officer) in June 2005 after his predecessor was terminated with the HDC in and about April 2005.

Yu v. NYC Housing Development Corporation, *et al.*

23. At the end of interview, Mariconda asked Plaintiff whether Plaintiff would consider starting in a consultant capacity first. Plaintiff answered to Mariconda that it depended on Mariconda's situation and decision.

24. At about 3:00 p.m., Monday, June 27, 2005, Plaintiff had a second interview with the HDC. After Plaintiff had a technical interview with Matthew Varghese[6] (hereinafter, "Varghese"), Mariconda immediately offered Plaintiff the job, Oracle DBA, starting as a consultant first. Upon information and belief, Mariconda told Plaintiff that in this way, Plaintiff could be brought on the HDC board faster. Plaintiff was told that once there was a vacancy for Oracle DBA, Plaintiff could become an employee of HDC. In the meanwhile, Plaintiff would be treated the same as other employees even as a consultant first. Mariconda told Plaintiff that he was formally titled CIO (Chief Information Officer) this day (June 27, 2005). Plaintiff congratulated on his promotion. Mariconda told Plaintiff that the promotion had not been announced yet at the HDC. Mariconda would be Plaintiff's direct supervisor in HDC and no one else.

25. Plaintiff was told that before he starts working in the HDC, he would get a mailed contract.

26. Plaintiff commenced his employment on Monday, August 1, 2005 at 10:00 a.m. Mariconda  immediately introduced Plaintiff to Rao Patibandla[7] (hereinafter, "Patibandla"), an Oracle DBA, who had been working for HDC as an employee of HDC.

27. Upon information and belief, before Plaintiff even saw the contract, he was already being asked to join a conference call with Mariconda, Patibandla , and William Storosuk (hereinafter, "Storosuk"), an Oracle Support Service consultant. The main topic for the conference call was based upon the Instruction from Storosuk on how to patch up the test/dev systems to the production system patched level (thereinafter "patch up"). In the meeting just after the conference call, Plaintiff was assigned to deal with failed daily backups for production systems in HDC. Patibandla was assigned to follow the Instruction to patch up test/dev systems. The meeting was the first of many weekly meetings that Plaintiff had to attend during his employment in HDC.

---

[4] Upon information and belief, Kulkarni was 30 something years old, of Indian national origin and a citizen of Indian. She joined the HDC in April 2001 as an employee and a developer.
[5] Upon information and belief, Palaniappan was 30 something years old, of Indian national origin and a citizen of Indian. He joined HDC in January 2005 as an employee and a developer.
[6] Upon information and belief, Varghese was 30 something years old, of Indian national origin and a citizen of Indian. He joined the HDC in October 2004 and an employee and developer.
[7] Upon information and belief, Patibandla was 30 something years old, of India national origin, a citizen of India, and was hired as an Oracle DBA and employee of HDC in the middle of February 2005.

Yu v. NYC Housing Development Corporation, *et al.*

28. Then Plaintiff received the contract and signed it immediately. Plaintiff was escorted to New York City Municipal Building to have a photo ID of HDC later that day.

29. Between approximately between August 6 and 12, 2005, Plaintiff found out he had two-year term contract with the HDC. Plaintiff was told he would have one-year term contract with HDC when he got an oral offer from Mariconda on June 27, 2005. On and about August 12, 2005, Mariconda confirmed to Plaintiff that it was not a typo for two-year term and that it already had an approved budget for the two-year term. It was signed by both John Crotty[8] (hereinafter, "Crotty"), and Mary McConnell[9] (hereinafter, "McConnell"). It was approved by Crotty. See Exhibit C.

30. Upon information and belief, since August 1, 2005, the very first day of Plaintiff's employment in HDC, Plaintiff was assigned tasks by Mariconda to have troubleshooting on failed daily backups, Plaintiff had been working on them and got improvements with scripting and other means. On approximately August 10, 2005, Plaintiff reported to Mariconda that there were over fifty (50) percent of daily backups failed since April and May, 2005, which was earlist time information available in the systems up to that day.

31. In approximately first and second week, August 1 to 12, 2005, Kulkarni said that "you don't look like you have a daughter in college." once Plaintiff told them Plaintiff had a daughter in college while being asked by other members of the IT group about Plaintiff's family.

32. Upon information and belief, at and about 9:15 a.m. Monday, August 15, 2005, during a routine daily check up, Plaintiff noticed the production system was hanging. Plaintiff immediately began troubleshooting, reported to Mariconda, and solved the problem quickly. Later Plaintiff summarized what caused the problem, what the solution was, and how to prevent it from occuring again in an e-mail sent to Mariconda and Patibandla. Then Mariconda forwarded it to the whole IT group.[10]

33. Upon information and belief, up to and around September 22, 2005, Mariconda had assigned various Oracle DBA tasks to Plaintiff. In the afternoon of September 22, 2005, in an extra weekly meeting among Mariconda, Patibandla and Plaintiff, Plaintiff, as usual, reported to Mariconda the status of all of Plaintiff's tasks. Mariconda asked both Plaintiff and Patibandla to list all their individual tasks and send it to him via e-mail.

---

[8] John Crotty was Executive, Vice President and Chief of Staff of HDC.
[9] Mary McConnell was Director of Human Resources of HDC.
[10] It was one of basic maintenance for the systems by Oracle DBA to prevent such errors from occurring. Upon information and belief, such errors had never happened since then after Patibandla followed Plaintiff's instruction to carry out and verified by Plaintiff thereafter.

Yu v. NYC Housing Development Corporation, *et al.*

34.    Upon information and belief, shortly after that, Plaintiff sent an e-mail, entitled "Recap of The Meeting", to both Mariconda and Patibandla.[11] There was no such e-mail sent by Patibandla, despite being asked to do so. Patibandla had mainly been assigned to patch up two test/dev systems to production's level since early August 2005.

35.    At and about 10:30 a.m. Friday, September 23, 2005, Patibandla sent Plaintiff an e-mail requiring Plaintiff to do a task. In previuos days, Mariconda assigned that task only to Patibandla. At that time, Plaintiff was doing his own tasks as assigned to him by Mariconda. But upon receiving th e-mail, Plaintiff asked Patibandla for clarification. Patibandla refused to give Plaintiff a clear confirmation, instead forcefully demanding Plaintiff just follow the order. In front of Kulkarni and Kenton Stewart[12] (hereinafter, "Stewart"), Patibandla said to Plaintiff that he was the only person who understood the priorities and systems in the HDC, and Mariconda knew nothing about the systems and priorities, it was Patibandla who created the position, Oracle DBA, so that Plaintiff was able to join the HDC. Kulkarni and Stewart reminded him that what he said was inappropriate and insulting to Mariconda and Plaintiff.

36.    Upon information and belief, Plaintiff immediately reported to Ping Choi[13] (hereinafter, "Choi") and Kulkarni. Choi and Kulkarni were the two supervisors in the absence of Mariconda. Mariconda was off on September 23, 2005.

37.    Upon information and belief, Patibandla, in the late afternoon of September 23, 2005, sent out an e-mail claiming that he was taking over several of Plaintiff's tasks without Mariconda's prior acknowledgement and Plaintiff's prior notice.

38.    Upon information and belief, after Plaintiff received Patibandla's e-mail, in the early evening, Plaintiff sent e-mails to Choi and Kulkarni indicating his concern about the situation. Later Mariconda sent an e-mail to Plaintiff that it would be delt with next Monday, "Don't worry about anything at all. Your work and companyu are appreciated".

39.    Upon information and belief, on Monday of September 26, 2005, Mariconda emphasized that he was the only supervisor in HDC to assign tasks to rest of the members of the IT group. No one would assign task(s) to anyone else in the IT group.[14] Plaintiff should be treated the same way as an employee. Mariconda made no comment on what Patiabndla said once he heard of the  past Friday event. There was no noticeable follow up or disciplinary actions  taken on Patibandla.

---

[11] There was an e-mail which was sent to Mariconda and Patibandla by Plaintiff as of September 22, 2005 at 4:22 p.m.
[12] Upon information and belief, Stewart was approximately 30 years old, an employee who joined HDC,in and about September 2004 as a developer.
[13] Upon information and belief, Choi was approximately 30 years old, an employee of HDC as a system administrator for HDC for over six years.
[14] In every Monday morning, Mariconda sent out an e-mail listed tasks and others for each every members of the IT group.

Yu v. NYC Housing Development Corporation, *et al.*

40. Upon information and belief, just after the meeting on September 26, 2005, Patibandla first carried out one of Plaintiff's tasks to downgrade one of systems that Plaintiff had upgraded accordingly and was approved by Mariconda.[15] Patibandla had spent several more days on it thereafter.

41. Upon information and belief, Mariconda followed Patibandla's claim and reassigned Plaintiff's tasks to Patibandla without any prior discussion with Plaintiff. Mariconda simply sent out an e-mail[16] on September 27, 2005.

42. Upon information and belief, Patibandla had mainly followed the Instruction to patch up dev/test systems since early August 2005 up to September 23, 2005, almost two months. He never successfully carried it out. One of the dev/test systems was completely inoperational after Patibandla applied some patches following the Instruction. Another was barely intact.

43. Upon information and belief, due to the situation stated above, Plaintiff questioned the Instruction on a conference call with Storosuk in approximately September 2005. Later Plaintiff suggested to Mariconda that Plaintiff might patch up dev/test systems in other ways. Mariconda refused.

44. Upon information and belief, Plaintiff had engaged in troubleshooting, debugging, scripting, testing, adjusting, and rescheduling for failed daily backups of production systems, with assistance from Choi and techincal support from Microsoft. Weeks later, there were over ninety (90) percent successful daily backups for production systems it used to be below a fifty (50) percent success rate. Later there were very few failed backups for production systems for other unknown reasons.

45. Upon information and belief, between approximately September to late November 2005, Mariconda assigned Plaintiff various tasks. One of these tasks was to install a monitoring software for the Oracle Database. Once Plaintiff worked on it, Plaintiff found out limitations in some areas and uninterpretable measurements in other areas on the software. After Plaintiff reported and explained to Mariconda, there was a conference call with the software company, including Mariconda, Choi and Plaintiff. Plaintiff reiterated what he found out on the software and suggested how to improve it to managers and engineers from the software company during the conference call. There were many exchanges between Plaintiff and the software company thereafter under Mariconda's requests.

46. Upon information and belief, later the software company made some improvements to the new version of the software in some areas and pending

---

[15] An e-mail, "Advise on Oracle version", sent out as of Monday, September 26, 2005, at 12:31 PM by Patibandla.
[16] An e-mail, "To Do – Week of 9-19" sent out as of Tuesday, September 27, 2005 at 10:03 AM by Mariconda.

Yu v. NYC Housing Development Corporation, *et al.*

unsolved issues in other areas. Plaintiff suggested to Mariconda that Mariconda might consider other software on the market that would monitor the Oracle Database without such limitations, and with more meaningful measurements.

47. Upon information and belief, on and about October and early November 2005, based upon the failed dev/test system patch up either Storosuk's Instruction or Patibandla's failure in carrying it out, and Mariconda's decision to refuse to let Plaintiff do it, Plaintiff later suggested and explained to Mariconda in several weekly meetings and other occasions that it could have fresh installation and then patched up to the production patched level. Mariconda eventually accepted this suggestion.

48. Upon information and belief, on and about late October or early November 2005, Mariconda, Storosuk, Patibandla and Plaintiff had a conference call. After discussing the plan for fresh installation and patch up, Mariconda requested that Storosuk come to HDC on November 15, 16, and 17, 2005, to install a new Oracle Apps (E-Business suite) system and patch up. Mariconda assigned Patibandla to prepare the server for fresh installation and patch up.

49. Upon information and belief, Patibandla spent almost two weeks preparing the server, and Sotrosuk and Patibandla spent three days, (November 15, 16 and 17, 2005). Three days later, the freshly installed system did not startup and run.

50. Upon information and belief, at approximately 13:30 p.m., November 17, 2005, Plaintiff heard about the diffculties with the freshly installed system. Plaintiff tried to acquire more information from Storosuk and Patibandla, and to work with them to figure out the problems. Storosuk and Patibandla refused to cooperate.

51. Upon information and belief, based upon Plaintiff's experience and understanding of the situation, Plaintiff sent an e-mail[17] to Mariconda and Patibandla for discussion, and follow up about a usable fresh installion system and patch up.

52. Upon information and belief, about thirty (30) minutes later after Plaintiff sent the e-mail to Mariconda and Patibandla, in the meeting with Storosuk, Patibandla and Plaintiff, Mariconda never mentioned Plaintiff's e-mail, and Mariconda never asked Storosuk and Patibandla what caused the problems. Mariconda decided to give giving up the server with no more fresh installation.

53. Upon information and belief, on the following day, November 18, 2005, Storosuk sent an e-mail to Mariconda, Patibandla and Plaintiff where he stated that he heard Plaintiff had concerns about the failed fresh installation. He want to get further information and follow up.

---

[17] An e-mail, "Concerns on Fresh Installation of Oracle E-Business 11.5.9", sent out as of November 17, 2005 at 13:55 PM, by Plaintiff.

Yu v. NYC Housing Development Corporation, *et al.*

54.  Upon information and belief, Mariconda replied that "We had discussed this all yesterday, …. All decisions were made when we all met yesterday.".

55.  Upon information and belief, on November 21, 2005, on the weekly meeting, Patibandla blamed Plaintiff for the "failed" backup on previous day. Plainntiff explained to him that it was successful. Patibandla insisted that it was a failure. Shortly after the meeting Plaintiff attached files and sent an e-mail to Patibandla and Mariconda indicating that backup was successful. Patibandla spent most of the day understanding it. And finally he realised that he was wrong on it.

56.  Upon information and belief, at approximately 4:30 p.m., November 22, 2005, Mariconda assigned Plaintiff to refresh one of the dev/test systems, after he got a request from Manimegalai Venkatesh[18] (thereinafter, "Venkatesh") who was working from home that day. Plaintiff finished it by 7:45 p.m., three hours later.

57.  Upon information and belief, on November 27, 2005, Venkatesh had trouble with her PL/SQL procedures after several days developing, testing and troubleshooting with prior and post refreshed the system. Finally once she got Plaintiff's help and explanation to her on one of basic knowledges as an Oracle developer, the problem was solved immediately.

58.  Upon information and belief, on approximately the week of November 28 to December 2, 2005, Mariconda assigned Plaintiff to set up daily refresh several dev/test systems. Each of these refreshes usually took several hours.  Plaintiff designed, developed and tested the relevant scripts. By December 8, 2005, there were daily automated refreshed dev/test systems before 8:00 a.m. on every weekdays. Later Mariconda called to hold.

59.  Upon information and belief, on approximately November 30 and December 1, 2005, there was a hardware failure on the production system. Choi spent time to obtain old spare parts and drivers to fix it. He was told the server was too old to be supported with out-dated spare parts and drivers. The hardware vendor strongly recommended an upgrade of server to new one as soon as possible.

60.  Upon information and belief, on and about December 14, 2005, Mariconda assigned Plaintiff to set up a test system for imaging system under the request of the software company according to a signed contract between HDC and the software company in October, 2005. Plaintiff was told to get more information from Peter Malecki[19] (hereinafter, "Malecki"). There were some exchanges and works done by Patibandla and other in HDC previously.

---

[18] Upon information and belief, Venkatesh was 20 to early 30 something years old, of indian national origin, a citizen of India, hired by Mariocnda as an Oracle developer consultant in and about September 2005.
[19] Upon information and belief, Malecki, earned his MBA (Master of Business Administation) from Columbia Business School, had worked in HDC for over ten years as of 2005, and is and was main person responsible for daily support imaging system since it was installed in HDC in and around year 2000.  He and Crotty are alumni from Columbia Business School.

Yu v. NYC Housing Development Corporation, *et al.*

61. Upon information and belief, once Plaintiff started to work on this assignment, he was told that it would be impossible to accomplish by the time the software company consultants came to HDC, in approximately late January 2006. Palaniappan had spent over five months failed to setup such test system before. Patiabndla, Oracle DBA, had also attempted this but eventually gave it up.

62. Upon information and belief, Plaintiff started his assignment immediately despite previous failed results by Oracle DBA and others in HDC. After did some research, approved by Mariconda, Plaintiff requested[20] a fresh installation by ordering documents and imaging software from the software company, software from Oracle Corp., reformatting the server and having OS (Operating System, such as Microsoft Window 2000 Server version with Service Pack 2) installed by a system administrator in HDC.

63. Upon information and belief, on December 21, 2005, Plaintiff was asked by Kulkarni, who was promoted to Deputy Chief Information Officer by Mariconda the previous day, December 20, 2005, to deal with an Oracle Apps problem which Venkatesh had for weeks and Patibandla had worked on for some time with Oracle Support.[21] Plaintiff solved the problem shortly after Kulkarni's request on December, 21, 2005.

64. Upon information and belief, on and around December 27, 2005, the newly formatted and OS installed server was availabe for Plaintiff. Within next two weeks, Plaintiff successfully installed the imaging test system with some assistance from Malecki on testing and verifying.

65. Upon information and belief, on and about January 5, 2006, there was a hardware and driver failure on the production system.

66. Upon information and belief, on and about the weekend of January 14-15, 2006, there was a hardware and driver failure that caused the production system to hang.

67. Upon information and belief, there was no update on the timing of the imaging software consultant's service. On and about January 23, 2006, Mariconda assigned Plaintiff to have scanning[22] performance tuning on the imaging production system which had undergone unsuccessful troubleshootings for about over a year.

---

[20] An e-mail, "Uninstall for NYCHDCNET", as of December 16, 2005, sent by Plaintiff to Malecki.
[21] Upon information and belief, there was a SR in Oracle Support registered with the issue. The SR is #4973883.993 opened on December 14, 2005.
[22] Scanning is part of whole imaging system.

Yu v. NYC Housing Development Corporation, *et al.*

68.  Upon information and belief, one of persons doing the scanning job, Isreal
     LaSalle[23] (thereainafter, "LaSalle"), told Plaintiff he had worsening scanning
     performance issues for about a year at that time, had had several upgraded
     replacements for his PCs, and was told that he needed much more powerful PC to
     solve the scanning performance issue. After several days work on the issue,
     Plaintiff solved the scanning performance issue without users' PC replaced and
     changed. Before Plaintiff reported to Mariconda, LaSalle already informed
     Mariconda and Kulkarni of his appreciation and enthusiam regarding Plaintiff's
     efforts and results, on approximately January 30-31, 2006.

69.  Upon information and belief, there was no update on the timing of the imaging
     system consultants' service.  Plaintiff voluntarily asked Mariconda what the
     contract was for. Mariconda sent a copy of the contract to Plaintiff. After
     reviewing and discussing it with Mariconda, Mariconda decided to assign
     Plaintiff to do one of the major jobs required by the contract, imaging system
     performance tuning, on approximately January 30-31, 2006.

70.  Upon information and belief, for years since the imaging system was installed and
     utilized in the HDC, it had been accumulating up to millions scanned documents
     stored in the production system. It took longer and longer for users to review
     images from the system. In some cases, users were unable to review images from
     the system at all and had to go to the storage room to find the original hard copies
     of the documents. These users were told that their PCs needed to be far more
     powerful.

71.  Upon information and belief, Plaintiff discovered a design deficiency in the
     imaging system inside of the Oracle Database that caused the deterioration in
     performance[24]. Plaintiff explained and demonstrated his findings to Mariconda
     and later to the software company through conference calls with Mariconda, e-
     mails, and phone calls. Based on the facts pointed out by Plaintiff, the software
     company agreed to provide free consultant service on the performance tuning for
     HDC. Plaintiff saved HDC tens thousand dollars.

72.  Upon information and belief, even before the software company corrected its
     deficient design, Plaintiff discovered alternative ways for users to review images
     from the system. Even in some extents, it still had slow performance. Users
     appreciated Plaintiff's expertise efforts and workable results.

73.  Upon information and belief, there were several failures of the production system
     on hardware between December 2005 and January 2006 after failed patch up
     existing dev/test systems, and attempts to freshly install system. On and about late
     January 2006, Mariconda decided to directly apply patches to the production
     system on the weekend of February 18, 19 and 20, 2006. Plaintiff strongly

---

[23] Upon information and belief, LaSalle had been doing the scanning job for many years in HDC as of year
2006.

[24] Imaging system review application program had closer to Big $\mathcal{O}(n^2)$ complexity.

Yu v. NYC Housing Development Corporation, *et al.*

suggested that the aforementioned patches should first be applied to one of dev/test systems that had been thoroughly tested by developers and verified and accepted by the users before being applied to the production system.

74.   Upon information and belief, on the morning of Tuesday, February 7, 2006, there was a BLUE SCREEN on the production system again. The production system completely went down. Mariconda immediately had an IT staff meeting on regarding the emergency. During the meeting, Crotty came in and directly, in front of all of participants, including Plaintiff, demanded answers from Mariconda on what was happening and why several new servers purchased over a year ago were not put into the production system yet.

75.   Upon information and belief, in the meeting, Mariconda decided and assigned Plaintiff to have fresh installation system and patch it up to the production system level as soon as a server setup by system administrators became available. At the same time Mariconda asked Help Desk generate a clientele call number for Plaintiff for this assignment.

76.   Upon information and belief, Mariconda requested Storosuk come to HDC during the weekend of February 18, 19 and 20, 2006, to work with Patibandla to apply patches to the production system without prior testing[25]. Plaintiff was assigned to work on imaging system modification, verification and troubleshooting due to applying patches on the production system at the same time.

77.   Upon information and belief, on and about Tuesday, February 21, 2006, newly patched production system was put back into daily normal business. Shortly after that, there were numerous new problems with the production system reported by various users to Help Desk one of which required normal business to be put on hold due to the failure of a major feature in Oracle Apps (Oracle E-Business suite). Mariconda assigned Plaintiff to troubleshoot it.

78.   Upon information and belief, Plaintiff immediately worked on his assignment and later filed a SR with Oracle Worldwide Support[26]. Plaintiff had worked around the clock with Sr. Oracle engineers from Oracle Support around the world. Oracle Support insisted on applying extra patches to deal with the issue, however,

---

[25] It was unprecedented and unprofessional to directly apply Oracle application patches to the production system without prior thorough testing and post thorough verification by users first. It is unnecessary to subject daily normal business to an unpredictable risk of interruption and malfunction. Upon information and belief, HDC's IT Policies and Procedures stated that "Any maintenance is initially done in a test environment. The test environment is an exact replica of the production environment pre-upgrade. The testing of any maintenance is done by the business users and the IT Team collectively and not in silos. Once the upgrade is complete, testing is conducted to ensure all systems are functional accessible and operational." Oracle strongly suggested "Before applying a patch to your production system, you should apply it to your test system. Keep you test system current with your production system. As you test the application of a patch, it is imperative that the test be realistic in terms of current patch level and transaction data."

[26] SR (Service Request) is an Oracle Support service number for its clients. This particular issue was registerd with SR # 5172171.993.

Yu v. NYC Housing Development Corporation, *et al.*

Mariconda refused to apply any extra patches without prior tested on test/dev system to the production system. Mariconda requested that Oracle Corp. send Storosuk back to HDC to provide free service with the issue. Storosuk had followed the suggestions from Sr. Oracle engineers and Oracle regional mangers and continued to attempt to  persuade Mariconda to accept it and to apply the extra patches directly to the production system saying that it was the only way to solve the problem. Mariconda firmly refused to accept it[27].

79.   Upon information and belief, at the same time, Plaintiff had been working with Sr. Oracle engineers around the world and research the issue on his own. Sr. Oracle engineers firmly claimed that the only way to solve the problem was to apply several extra patches based upon their thorough research and review of HDC's similar incident the year before. In the middle afternoon of Friday, February 24, 2006, within four days, Plaintiff figured out the problem and solved it without applying a single extra patch. The business in HDC backed with this major feature on the Oracle Apps system functioned normally.

80.   Upon information and belief, reaction from Mariconda for Plaintiff's timely solution to the issue was that he kept himself silent on it and said nothing at all.

81.   Upon information and belief, there were other problems with the newly patched production system, one of which was initially assigned to Shiv Kar[28] (hereinafter, "Kar") by Mariconda. It was registered in the clientele Help system[29]. The problem was a report process which took several minutes to run prior to the newly patched production system never ended in the newly patched production system. Despite spending days on it, Kar was unable to properly solve the problem.

82.   Upon information and belief, on the following week, on and about between February 28 and March 1, 2006, after Plaintiff solved the major problem with the newly patched production system on Friday, February 24, 2006, Plaintiff quickly solved this problem properly and increased its performance over fifty (50) percent. Plaintiff aided Kar by explaining the solution.

83.   Upon information and belief, there were other remaining issues on the post patched production system. Mariconda assigned several of these to Plaintiff. Plaintiff had worked with Oracle Worldwide Support on troubleshooting some of the issues. Oracle Support suggested applying extra patches for most of the issues.

---

[27] Upon information and belief, a similar situation happened approximately one year ago, March 2005, this caused a major disruption in normal business for over a month. Mariconda recalled that event, saying that it was deja vu. Shortly after that event in March 2005, John Yaeger (hereinafter, "Yaeger"), Mariconda's predecessor, was terminated with HDC.

[28] Upon information and belief, Kar joined HDC in the middle of February 2006, as a developer. He was 30 something years old, of Indian national origine, and a citizen of India. He was introduced by Kulkarni in the beginning of year 2006 to HDC.

[29] Upon information and belief, it was assigned to Kar on February 22, 2006 and closed by Kar on March 17, 2006 with the clientele call number #16925.

Yu v. NYC Housing Development Corporation, *et al.*

Plaintiff updated the situation with Mariconda who refused to apply any extra patches to the production system without prior tested on dev/test systems. All remaining issues were dependant on the dev/test systems availability.

84.    Upon information and belief, since Plaintiff was assigned by Mariconda, on February 7, 2006, to have fresh installation system and patch it up, there was no updated information about the server availability. The initial scheduled time was overdue largely because of "unexpected problems with post directly applied patches to the production system". At 10:00 a.m. on Monday, March 6, 2006, before weekly IT staff meeting with Mariconda, Plaintiff sent out an e-mail[30] to Mariconda and other relevant IT persons, such as Kulkarni, Choi, Patibandla and Michael Lam[31] (hereinafter, "Lam") to receive confirmation regarding the status of the server setup so that Plaintiff could start work on the assignment.

85.    Upon information and belief, Mariconda reassigned Plaintiff's assignment to Patibandla at 8:03 a.m. shortly before the meeting[32]. Patibandla did not finish it until approximately in late April and early May 2006.

86.    Upon information and belief, on Tuesday, March 7, 2006, just after Plaintiff got out from the subway station at approximately 8:20 a.m., Plaintiff got an e-mail from Mariconda asked Plaintiff to drop by his office when Plaintiff arrived at HDC. Once Plaintiff arrived at his office, Mariconda brought Plaintiff into a board room where Kulkarni and Choi were sitting already. Mariconda immediately loudly threatened to throw Plaintiff out of HDC,  purportedly for spreading bad news among the recipients, revealing Patibandla to be incapable of finishing his tasks, and conducting a supervising role over Mariconda by sending the e-mail.

87.    Upon information and belief, Kulkarni and Choi were just sitting there speechless. Plaintiff was totally shocked. It was totally incomprehensive for Plaintiff. The only purpose of Plaintiff's e-mail was to get Plaintiff's assignment done and to make the new production system available as early  as possible, which Plaintiff calmly explained to Mariconda who realized that the conflict had been a misunderstanding. The meeting ended in professional fashion with discussion of outstanding technical issues related to how to get a newly cloned system into service as soon as possible and Plaintiff provided his expert advices as usual.

88.    Upon information and belief, during and about this time period, in and about February 2006, there was another task which Mariconda initially assigned to Plaintiff to finish within a week. Before Plaintiff started on it, Mariconda

---

[30] An e-mail, "Proposal for Cloning Oracle in New Server", sent out by Plaintiff, as of March 6, 2006, at 10:00 a.m.
[31] Upon information and belief, Lam was approximately 30 years old, an employee and a system administrator, who was assigned to setup a server for Plaintiff's assignment on February 7, 2006.
[32] An e-mail, "RE: Proposal for Cloning Oracle in New Server", sent out by Mariconda, as of March 7, 2006, at 8:03 a.m.

Yu v. NYC Housing Development Corporation, *et al.*

reassigned it to Patibandla without discussion with Plaintiff. Patibandla exclusively spent over a month on this assignment without being able to finish it. Mariconda reassigned it back to Plaintiff[33].

89.   Upon information and belief, on and about April 3, 2006, once Plaintiff started working on this assignment, Plaintiff could not get any information regarding it from Patibandla even though Patibandla had exclusively worked on it for over a month and with some extra assistance from Vijay Pandu[34] (thereinafter, "Pandu"). Patibandla filed a SR with Oracle Support on the issue and worked on it. After many back and forth, Oracle Support stated that the issue needed an Oracle DBA in HDC who would work with Oracle Support[35] to solve it technically.

90.   Upon information and belief, Plaintiff called Mariconda on April 7, 2006 and asked Mariconda whether Plaintiff could work from home due to family matters and the urgency of the reassignment Plaintiff was working on. Mariconda refused and stated that WFH (Work From Home) would no longer be permitted for consultants[36] in HDC.

91.   Upon information and belief, Plaintiff worked for a week longer and finished this assignment successfully with some assistance on testing and verifying from Malecki.

92.   Upon information and belief, after a long delayed migration of cloned production system to a new hardware server, Mariconda decided on the weekend of May 13, 14 and 15, 2006, to do.

93.   Upon information and belief, on the week of May 8-12, 2006, prior to the weekend of migration cloned production system to a new hardware server, Plaintiff discovered invalid changes in the prior migrated cloned system that rendered the system unable to start up. Plaintiff notified Mariconda and Patibandla immediately. Later Patibandla sent an e-mail about the changes he made.

94.   Upon information and belief, Mariconda requested Storosuk to HDC and work with Patibandla on the weekend of May 13, 14 and 15, 2006, to carry out the migration. Storosuk and Patibandla worked together on the weekend and migrated cloned production system to a new hardware server. Plaintiff was assigned to verify the reporting system, plus work with Malecki on the imaging system migration at this time.

---

[33] An e-mail, "Good Morning", one of every Monday morning e-mail sent out by Mariconda on new assigments and update on existing ones for every staff in IT group. This was sent out as of April 3, 2006.
[34] Upon information and belief, Pandu was a 20 to 30 something years old, of India national origin, and a citizen of India. He was hired by Mariconda in and around October or November 2005, as an Oracle developer consultant.
[35] Ironically, Patibandla had been doing Oracle DBA job in HDC as a permanent employee for over a year already at that time.
[36] An e-mail, "steve won't be in today", sent out by Mariconda immedaitely after end of phone call.

*Yu v. NYC Housing Development Corporation, et al.*

95.   Upon information and belief, Patibandla filed a SR with Oracle Support, at and around 17:09 p.m. May 15, 2006, at the highest severity level 1, dealing with one of new problems in the newly migrated production system, that had escaped anyone's notice in HDC.

96.   Upon information and belief, on and about May 15 and 16, 2006, Plaintiff solved a long outstanding issue for Farina Cocker[37](thereinafter, "Cocker") within several hours. She had been told by Patibandla and Storosuk that the issue would take several weeks with some design changes to fix it.

97.   Upon information and belief, on and about May 17, 2006, users reported problems in the newly migrated production system to Help Desk.

98.   Upon information and belief, not long after that, Mariconda requested Storosuk's services on the issues. At approximately 14:30 p.m., Kulkarni and Patibandla had a loud argument. Kulkarni questioned Patibandla why he made some untested changes to the production system. Immediately after that, Mariconda and Patibandla had an explosive argument in front of Patibandla's desk.  At approximately 15:00 p.m. Patibandla left his desk. It was his last time in front of a desk in HDC.

99.   Upon information and belief, on and about May 17, 2006, Plaintiff immediately assumed Patibandla's responsibilities on top of his own. Plaintiff became a sole person taking care of all systems of production, development and testing for the whole HDC.

100.  Upon information and belief, Plaintiff was assigned by Mariconda to work with an Oracle Support consultant who was coming to HDC, on May 18, 2006, to install a patch to one of the dev/test systems suggested by Oracle Support on the issue. Plaintiff informed Mariconda that Plaintiff had already applied the patch to one of the systems in HDC last September 2005, thus could apply it to other systems without the help of Oracle Support consultant. Mariconda insisted on letting the Oracle Support consultant handle the task. Mariconda ordered Plaintiff to download the patch and move it to the system.

101.  Upon information and belief, on and about May 18, 2006, Oracle Support consultant and Plaintiff installed the patch to one of the dev/test systems. Plaintiff was assigned by Mariconda to monitor and test the post patched system. At the same time, Plaintiff was working on the other outstanding issues raised by the newly migrated production system and some carried over from the prior migrated production system.

---

[37] Upon information and belief, Cocker was 20 something years old, and an employee of HDC for several years, a non US citizen.

Yu v. NYC Housing Development Corporation, *et al.*

102. Upon information and belief, on and about later afternoon Monday, May 22, 2006, Mariconda officially announced that Patibandla was no longer with HDC. Most people in IT group were aware of that since May 17, 2006. After the announcement, most co-workers asked the Plaintiff when he would become an employee of HDC officially

103. Upon information and belief, Plaintiff was assigned by Mariconda to work with Choi to change the systems' passwords on and about May 22, 2006.

104. Upon information and belief, Plaintiff was assigned by Mariconda to work with Storosuk, on and about May 23 and 24, 2006, to install the patch to one of the production systems.

105. Upon information and belief, Plaintiff and Storosuk installed the patch to one of production systems, on and about May 23, 2006. Plaintiff was assigned by Mariconda to monitor it closely thereafter.

106. Upon information and belief, at about 16:30 p.m., May 23, 2006, while Plaintiff was updating Mariconda regarding the coming change of passwords assignment and other things, there was a conversation among Mariconda, Storosuk and Kar in Mariconda's office that time. Mariconda was asking Storosuk how quickly Kar could be trained to handle the Oracle DBA job with training classes, as well as on and off site mentoring by Storosuk, regardless of how much money would be spent.

107. Upon information and belief, Plaintiff was not invited to involve the conversation and directly went to the computer room with Choi to work on changing the systems passwords. Choi and Plaintiff finished this task early in the evening, May 23, 2006. During that time, Plaintiff told Choi what Plaintiff had just heard in Mariconda's office, and the two conversed on what and how to deal with such an unexpected issue.

108. Upon information and belief, on and about early morning, May 24, 2006, Plaintiff requested a meeting with Mariconda in his office. Mariconda recognized Plaintiff very well proved qualification on the position and great contributions to HDC. Plaintiff expressed his willingness to become an employee of HDC to Mariconda. Mariconda promised to Plaintiff on June 27, 2005 while offering Plaintiff an Oracle DBA job start as a consultant and later as an employee once there was a vacancy available[38]. There was a vacancy, Oracle DBA, becoming available due to Patibandla's leaving.

---

[38] Upon information and belief, Michelle Antao (hereinafter, "Antao"), was approximately 20 years old and one of the members in the IT group. She started to work in HDC as a consultant. After months, she became an employee of HDC approved by Mariconda, in and about April 2006, even though there was no vacancy that time. HDC created a new position for her as an employee from her former role as a consultant. There were two more hirings as employees, Faith Fleesler, 30 something years old in August 2004, and Stephanie Sadowski, 20 to 30 something years old in October 2004.

*Yu v. NYC Housing Development Corporation, et al.*

109. Upon information and belief, shortly after the conversation, Mariconda sent out an e-mail stating that "With Rao [Patibandla] leaving, Shiv [Kar] will pick up his workload on the Oracle Apps side of things.... As far as the systems are concerned, Steve [Plaintiff] and Shiv [Kar] will share the duties on [all systems][39].

110. Upon information and belief, on May 24, 2006, Plaintiff requested an appointment with McConnell (Director of Human Resources of HDC). McConnell made an appointment with Plaintiff for initial thirty (30) minutes on the following day, May 25, 2006. Plaintiff requested that it should be confidential.

111. Upon information and belief, Plaintiff promptly reported the matter to McConnell during an hour-long meeting, on May 25, 2006, in her office. One of many matters Plaintiff reported to McConnell was that Plaintiff needed Human Resources' involvement to have Mariconda to reconsider his evidently wrong decision, by replacing Plaintiff by Kar. Kar was 30 something years old. Kar was a far junior employee with very little experience as an Oracle DBA. Kar had been in on-the-job training for three months since he joined HDC in middle of February 2006. Mariconda promised Plaintiff in June, 2005. Plaintiff had made great contribution to HDC. Plaintiff had well proved experience and skills on doing Oracle DBA job in HDC. Plaintiff was 50 years old and had a daughter who is graduating from a college in California in coming June 2006. Plaintiff was willing to become an employee of HDC. There was a vacancy, Oracle DBA, because Patibandla was leaving. Plaintiff did not want to be overlooked by Mariconda's wrong decision.

112. Upon information and belief, McConnell suggested that she would setup a three-way meeting among Mariconda, herself and Plaintiff to deal with it. Plaintiff suggested that McConnell dealt with Mariconda first on these matters. Then based upon the feedback, Plaintiff would work it out with McConnell.

113. Upon information and belief, on and about May 24, 2006, after Kulkarni, Kar and others spent several days searching for "missing" forms (part of Oracle Apps) in the system with backups available on site, they asked for more backups from off site backed to November 2005 which would take more time and much more money to have them back to on site. Once Plaintiff was told what they had been doing and asking for, Plaintiff searched the system and found out that the specific on-site backup had the "missing" forms on it. The "missing" forms were recovered shortly after that on and about May 24, 2006.

114. Upon information and belief, on and about May 26, 2006, approved by Mariconda, Pandu was going to work from home (WFH), around between May 28 and June 2, 2006, a whole week[40].

---

[39] An e-mail, "Change of Roles", sent out by Mariconda, at 8:48 a.m., May 24, 2006.
[40] An e-mail, "Scheduled Days Off for the Week of 05/29/06", sent out as of May 26, 2006.

Yu v. NYC Housing Development Corporation, *et al.*

115.    Upon information and belief, on May 26, 2006, Plaintiff initiated a whole production system backup request. Because almost two weeks prior it was migrated to the current hardware server there was no such backup in place. Approved by Mariconda remotely (who was out of office that day), Plaintiff worked closely with Choi on planning and later carried out the plan together.

116.    Upon information and belief, at and around 8:00 a.m. Saturday morning, May 27, 2006, Plaintiff received an e-mail from Choi after the night long backup finished. Plaintiff immediately managed to start up the production system.

117.    Upon information and belief, at and around 8:00 a.m., Sunday morning, May 28, 2006, there were e-mails indicated Choi was called, at and around 2:00 a.m., to check out all servers in the computer room due to an overheating alarm in the building. Mariconda called and asked Plaintiff to remotely shutdown those servers except productions' immediately. Plaintiff implemented and shut down those servers.

118.    Upon information and belief, in the following weekdays, Plaintiff made scripts to schedule weekend automatic weekend shutdown of these servers under assignment from Mariconda. For the following several weekends, Plaintiff instituted shutdown on each following Fridays and bring backup these servers smoothly on each early Mondays.

119.    Upon information and belief, on and around May 30, 2006, at 4:24 p.m., Mariconda sent Plaintiff an e-mail, subject: "consulting hours", asking Plaintiff to take 5 days off by the end of July, due to HDC "running close to projecting out to our budgeted amount."

120.    Upon information and belief, at and around 3:30 p.m. May 31, 2006, Plaintiff requested and had a meeting with Mariconda. Plaintiff clearly stated that Mariconda's decision of letting Kar fill the vacancy, Oracle DBA, was a wrong one. Plaintiff asked Mariconda to reconsider his decision. Plaintiff questioned Mariconda on the issue of the "budgeted amount" because according to the contract, there still was enough money for Plaintiff to work as usual for over three months up to the end of July, 2006, for the remaining nine (9) to ten (10) calendar weeks. Plaintiff suggested to Mariconda to continue the discussion further on the "budget" issue once Plaintiff came back from California, on and around June 20, 2006. Mariconda agreed with Plaintiff's suggestion.

121.    Upon information and belief, on and about June 1, 2006, Plaintiff ran a mandatory monthly Oracle Apps audit report on the production system and found out that it contained empty contents. Plaintiff reported to Mariconda on the matter. Later Plaintiff did some researches on it and filed a SR with Oracle Support. It was caused by abnormal migration procedures carried on weeks ago in HDC and needed extra patch to fix it.

Yu v. NYC Housing Development Corporation, *et al.*

122. Upon information and belief, on the outstanding issues-solving meeting, in early morning of June 1, 2006, Plaintiff figured out that the action plan by Oracle Support to execute the scripts was not executable for the HDC due to unsuitable to Windows platform.

123. Upon information and belief, on the morning of June 2, 2006, Plaintiff updated the status of his tasks with Mariconda, particularly on the outstanding issues since patched production system from the middle of February 2006, migrated production system from the middle of May 2006, and other tasks Plaintiff had been working on.

124. Upon information and belief, on and about June 2, 2006, Mariconda sent out an e-mail requesting Storosuk's services to HDC, total planned time were from eleven (11) to fifteen (15) days. One of the listed things was "Hands on mentoring for tn[t]e new Apps DBA". And most of remaining things were the things Plaintiff had already done and nearly done for HDC.  Storosuk's services, as an Oracle Support consultant, charged HDC many times more than what HDC paid for Plaintiff's job[41].

125. Upon information and belief, on and about June 5, 2006, in a weekly meeting with Mariconda, Kulkarni, Kar and Plaintiff, Mariconda presented the plan of request Storosuk's plan of services to HDC. Plaintiff reiterated with the update that had discussed with Mariconda the past Thursday, June 2, 2006, and articulated that almost all of things listed in the Storosuk's plan Plaintiff had already done or was nearly finished.

126. On June 7, 2006, Plaintiff went to EEOC in New York Office and had a consultation with one of EEOC investigators in a private room. Plaintiff stated the situation in HDC, particularly Mariconda's series of actions against Plaintiff. It is unlawful to take discriminatory actions against an employee and/or applicant because of age and/or national origin. It is unlawful to retaliate against an employee and/or applicant who opposed unlawful activities. Plaintiff put almost two hours lunch break for the day on his bi-weekly time sheet. It was a rain day. The time sheet was approved and signed by Mariconda, on and around June 13, 2006.

127. Upon information and belief, on and about later afternoon of June 7, 2006, Kar requested Plaintiff to deal with one of issues initially assigned to Kar by Mariconda. After he had spent time on it and could not solve it, he requested Plaintiff's expertise and favor without Mariconda's knowledge. Plaintiff solved the problem within 30 minutes by 5:00 p.m.

---

[41] Plaintiff used to be an Oracle Corp. consultant several years ago. Plaintiff's services to Oracle Corp.'s clients, in the United States and around the world, charged many times more than Plaintiff paid by HDC, plus all expenses, such as airfare, lodging, car rental, taxi, and meals.

Yu v. NYC Housing Development Corporation, *et al.*

128. Upon information and belief, on June 13, 2006, McConnell asked Plaintiff into her office. McConnell updated Plaintiff on the feedback from Mariconda. Mariconda was very upset. Mariconda was irritated that someone interfered with his decision. Mariconda had authority to make the decision on his own, McConnell told Plaintiff. Plaintiff stated clearly to McConnell that Mariconda's actions were unlawful discriminatory activities, Plaintiff expressed that Plaintiff would be filing a complaint with EEOC if this matter could not be solved soon in HDC. Plaintiff expressed the desire to contact with upper managers in HDC if it is proper. McConnell said she would contact them first and give Plaintiff feedback their response.

129. Upon information and belief, on and about June 13, 2005, Mariconda assigned Kar along with Choi to have one of systems fully backed up. The next morning Choi found out his scheduled backup was failed because Kar had shut the server down completely the previous day.

130. Upon information and belief, on and about June 14-15, 2006, Mariconda assigned Kar to have one of Oracle databases refreshed. Kar spent most of morning finding out what Plaintiff and Kulkarni told him on previous day. And Kar asked and got Plaintiff's help on how to exp/imp the Oracle database and how to check out the information what he had problems with.

131. Upon information and belief, on and about June 15, 2006, Mariconda assigned Kar to have one of Oracle databases patched. Plaintiff suggested him to follow up the README instruction step by step. Kar "stumbled" on the task. Later Kar requested a second "thoughts" from Storosuk. Storosuk gave him a condensed README to follow up in later that afternoon[42] via an e-mail.

132. Upon information and belief, on and around Friday, June 16, 2006, Kar made some changes to the production system[43].

133. On June 20, 2006, the first day that Plaintiff had returned from his daughter's commencement ceremony in California that weekend, Plaintiff sent out an e-mail, "Patches for Production's Outstanding Issues, Refresh with Rman, ...", to Mariconda, Kulkarni and Kar. Based on Plaintiff's past few weeks' work, during which Patibandla had left, it summarized the outstanding issues, pending solutions and how to carry them out, confirmation of the patched level in one of test systems, and other concerns. Only three minutes later, Mariconda responded that "I am out today and unavailable".

134. Upon information and belief, on June 20, 2006, Kar responded with an attachment regarding a week long task that he had implemented. Plaintiff reviewed the information. Plaintiff raised question with Kar's conclusion. Plaintiff told Kar that what he had done was outdated in HDC because the current version of Oracle

---

[42] There was an e-mail from Storosuk stated that "From the readme: Post Installation Instructions ..."
[43] Once he changed, he sent out an e-mail claimed the task finished by him.

Yu v. NYC Housing Development Corporation, *et al.*

Apps (E-Business suite) was different from the previous version on recording applied patches history.

135. Upon information and belief, early morning June 21, 2006, Mariconda assigned Plaintiff to troubleshoot the problem that Crotty raised on and about previous Friday, June 16, 2006. Plaintiff said to Mariconda once there was a solution, Plaintiff would verify it with Crotty. Mariconda would do it Mariconda responsed to Plaintiff. Plaintiff quickly found out the solution. It was caused by the change that Kar had made on the previous Friday.

136. Upon information and belief, in the morning of June 21, 2006, on the meeting of Mariconda, Kulkarni, Kar and Plaintiff, Plaintiff told Mariconda that Plaintiff's other tasks depended on Kar's verification on the level of patches in the system. Kar could not confirm his conclusion. Plaintiff pointed out to Kar where and how to check out all information. Mariconda asked Kar to research further on it. The meeting adjourned for thirty (30) minutes for Kar to get further research on it. The adjourned meeting was postponed one hour more, and another one hour more two hours later. There was no answer from Kar.

137. Suddenly at and around 12:00 p.m. whilst Plaintiff was verifying the solution with one of users on Crotty's issue, Mariconda interrupted him and took Plaintiff into the office of McConnell. Mariconda announced that he decided to terminate Plaintiff immediately according the contract. A minute later, Mariconda brought Plaintiff's bag into the office. McConnell apologized to Plaintiff for the outcome. Plaintiff stated that it was unlawful retaliation, it was discriminatory actions against Plaintiff because of Plaintiff's age and national origin. Plaintiff was going to file a complaint with EEOC. Plaintiff requested a termination letter from HDC with any reason(s) stated on before leaving.

138. While Plaintiff was sitting with McConnell and Choi, packing his personal belongings, talking to McConnell and Choi, writing personal notes and waiting for the determination letter from HDC, Mariconda brought up building securities to the room. McConnell was very surprised. After building securities heard McConnell's explanation of Plaintiff's waiting for the letter, they left. Not long after that, Mariconda brought up policemen to the room.

139. Plaintiff was humiliated and insulted by Mariconda's unlawful actions against Plaintiff, and by Mariconda's bringing in building securities first and policemen later to the room.

140. At and about 12:30 p.m. June 21, 2006, Plaintiff received the termination letter from McConnell. The letter was signed by Teresa Gigliello, Senior Vice President of the HDC. See Exhibit D.

141. On August 1, 2006, Plaintiff filed the Form SS-8 with Internal Revenue Service (thereinafter, "IRS"), attached with all relevant documents and evidence.

Yu v. NYC Housing Development Corporation, *et al.*

142. On January 11, 2007, IRS gave Plaintiff a Determination Letter[44] of Form SS-8, after its investigation and evaluation with HDC according to the traditional common-law test, statutes and regulations[45]. It stated that "We hold the worker to have been an employee of the agency, for services performed in 2005 and 2006". See Exhibit B.

143. As of today, June 11, 2007, Plaintiff has not received his last bi-weekly payment from HDC yet.

## AS AND FOR A FIRST CAUSE OF ACTION

144. Plaintiff repeats and realleges each and every allegation contained in paragraphs 20 through 143 of this Complaint with the same force and effects as if set forth herein.

145. Plaintiff was an employee of HDC, according to the traditional common-law test, which had been applied by IRS, ADEA and Title VII.

146. Defendant Mariconda, acting under color of state law and in his capacity as Chief Information Officer for the HDC, denied Plaintiff'e employment, by replacing Plaintiff by Kar in violation of ADEA, Title VII and NYSHRL.

147. By reason of the decision of Defendant Mariconda, Plaintiff has lost wages and other compensation.

## AS AND FOR A SECOND CAUSE OF ACTION

148. Plaintiff repeats and realleges each and every allegation contained in paragraphs 20 through 147 of this Complaint with the same force and effects as if set forth herein.

149. The actions of Defendant Mariconda set forth above caused Plaintiff to be denied his employment in violation of ADEA, Title VII and NYSHRL.

150. Defendant HDC is liable for the actions of Defendant Mariconda because Defendant Mariconda is the person within the HDC with ultimate authority to make and execute personnel policy for the HDC with respect to hiring, assigning duties, and terminating its employees.

---

[44] Refer to Case # 48618 from Internal Revenue Service, SB/SE, Compliance, BIRSC, SS-8 Unit, dated on Janruary 11, 2007.
[45] Investigatin and evaluation on the principles of Behavioral Control, Financial Control and Relationship of the Worker and Firm in the Form of SS-8 Part I, II and III, respectively. See detail on Form SS-8 from IRS.

Yu v. NYC Housing Development Corporation, *et al*.

151. That as a result of the foregoing, that Defendant HDC discriminated against Plaintiff in violation of the ADEA, Title VII, and NYSHRL.

152. By reason of the decision of Defendant HDC's policymaker, Plaintiff has lost wages and other compensation.

## AS AND FOR A THIRD CAUSE OF ACTION

153. Plaintiff repeats and realleges each and every allegation contained in paragraphs 20 through 152 of this Complaint with the same force and effects as if set forth herein.

154. Plaintiff, was 50 years old, a qualified professional, opposed Defendant HDC's unlawful discriminatory activities. Defendant HDC made decision of replacing Plaintiff by Kar, who was 30 something years old, and outside of the protected class of ADEA.

155. That as a result of the foregoing, Defendant HDC violated the ADEA.

156. By reason of the decision of Defendant HDC, Plaintiff has lost wages and other compensation.

## AS AND FOR A FOURTH CAUSE OF ACTION

157. Plaintiff repeats and realleges each and every allegation contained in paragraphs 20 through 156 of this Complaint with the same force and effects as if set forth herein.

158. Plaintiff, is and was a citizen of the United States, of Chinese national origin, a qualified professional, opposed Defendant unlawful discriminatory activities. Defendant HDC made decision of replacing Plaintiff by Kar, who was of Indian national origin, outside of Plaintiff's protected class of Title VII.

159. That as a result of the foregoing, Defendant HDC violated the Title VII.

160. By reason of the decision of Defendant HDC, Plaintiff has lost wages and other compensation.

## AS AND FOR A FIFTH CAUSE OF ACTION

161. Plaintiff repeats and realleges each and every allegation contained in paragraphs 20 through 160 of this Complaint with the same force and effects as if set forth herein.

*Yu v. NYC Housing Development Corporation, et al.*

162. Defendant HDC, in retaliation for Plaintiff's having opposed Defendant's unlawful discriminatory activities, instituted termination proceedings against Plaintiff.

163. That as a result of the foregoing, Defendant HDC violated the ADEA and/or Title VII, NYSHRL.

164. By reason of the decision of Defendant HDC's policy maker, Plaintiff has lost wages and other compensation.

## AS AND FOR A SIXTH CAUSE OF ACTION

165. Plaintiff repeats and realleges each and every allegation contained in paragraphs 20 through 164 of this Complaint with the same force and effects as if set forth herein.

166. Defendant, had consistently treated Plaintiff less favorably than others who were not in Plaintiff's protected class because of Plaintiff's age and national origin

167. That as a result of the foregoing, Defendant violated the ADEA, Title VII and NYCHRL.

168. By reason of the decision of Defendant, Plaintiff has lost wages and other compensation.

## AS AND FOR A SEVENTH CAUSE OF ACTION

169. Plaintiff repeats and realleges each and every allegation contained in paragraphs 20 through 168 of this Complaint with the same force and effects as if set forth herein.

170. Defendant, had intentionaly taken disciminitory activities against Plaintiff, with malice, because of Plaintiff's age and national origin.

171. That as a result of the foregoing, Defendant violated the ADEA, Title VII and NYCHRL.

172. By reason of the decision of Defendant, Plaintiff has lost wages and other compensation.

## AS AND FOR A EIGHTH CAUSE OF ACTION

173. Plaintiff repeats and realleges each and every allegation contained in paragraphs 20 through 172 of this Complaint with the same force and effects as if set forth herein.

*Yu v. NYC Housing Development Corporation, et al.*

174. Defendant, had intentionaly taken disciminitory activities against Plaintiff, with reckless indifference, because of Plaintiff's opposing Defendents unlawful activities.

175. That as a result of the foregoing, Defendant violated the ADEA, Title VII and NYCHRL.

176. By reason of the decision of Defendant, Plaintiff has lost wages and other compensation.

## AS AND FOR A NINTH CAUSE OF ACTION

177. Plaintiff repeats and realleges each and every allegation contained in paragraphs 20 through 176 of this Complaint with the same force and effects as if set forth herein.

178. Plaintiff, was 50 years old, a qualified professional, of Chinese national origin, being overlooked for the vacancy, by Defendant's adverse employment action, filled with an unqualified, 30 something years old, of Indian national origin, the outside of Plaintiff's protected class of ADEA and/or Title VII, NYSHRL.

179. That as a result of the foregoing, Defendant violated the ADEA, Title VII and NYCHRL.

180. By reason of the decision of Defendant, Plaintiff has lost wages and other compensation.

## AS AND FOR A TENTH CAUSE OF ACTION

181. Plaintiff repeats and realleges each and every allegation contained in paragraphs 20 through 180 of this Complaint with the same force and effects as if set forth herein.

182. Plaintiff, was 50 years old, a qualified professional, of Chinese national origin, being overlooked for the vacancy, by Defendant's adverse employment action, retaliated against Plaintiff's opposing Defendant's unlawfull activities.

183. That as a result of the foregoing, Defendant violated the ADEA, Title VII and NYCHRL.

184. By reason of the decision of Defendant, Plaintiff has lost wages and other compensation.

## AS AND FOR A ELEVENTH CAUSE OF ACTION

*Yu v. NYC Housing Development Corporation, et al.*

185. Plaintiff repeats and realleges each and every allegation contained in paragraphs 20 through 184 of this Complaint with the same force and effects as if set forth herein.

186. Defendants, as an employee of the HDC, had not been paid any benefits by Defendant HDC since August 1, 2005.

187. That as a result of the foregoing, Defendant HDC violated the ERISA.

188. By reason of the decision of Defendant, Plaintiff has lost wages and other compensation.

WHEREFORE, Plaintiff demands judgment against the Defendants on each and every cause of action:

1. awarding back wages from June 21, 2006 until January 1, 2007, seniority and accrued interest thereon;

2. awarding unpaid wages between June 11 and 21, 2006, with the IRS form W-2, accrued interest thereon;

3. awarding benefits, as an employee of HDC, from August 1, 2005 until January 1, 2007, with accrued interest thereon;

4. awarding the full amount of applicable compensatory damages;

5. awarding the full amount of applicable punitive damages;

6. awarding costs;

7. awarding counsel fees pursuant to Section 1988 for violation of Federal Civil Rights Statutes;

8. and for such other relief as this Court may deem just and proper.

Dated: May 12, 2010

   New York, New York

                                        Yours etc.,

                              BY: _____
                                        *Plaintiff: Steve Yu*

Case 07cv5541 (GBD) (MHD)                    AFFIRMATION OF SERVICE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
Steve Yu,

             Plaintiff,                                07cv5541 (GBD) (MHD)

    -   against -

                                          <u>AFFIRMATION OF SERVICE</u>

New York City Housing Development Corporation
(HDC), PELLEGRINO MARICONDA, Sued
herein in his Official and Personal Capacity,

             Defendant(s).

------------------------------------------------------------------------x

Steve Yu, Pro se Plaintiff,

TO THE PRO SE CLERK OF THIS COURT:

        I, <u>Steve Yu</u>, Pro se Plaintiff, declare under penalty of perjury that I have served a
copy of the attached <u>AMENDED COMPLAINT</u> upon <u>Defendant New York City Housing
Development Corporation</u> via <u>Mr. Dean Silverberg</u> and <u>Ms. Anna Cohen</u> whose address are
<u>Epstein Becker & Green, P.C. 250 Park Avenue. New York, New York  10177</u> by overnight mail
on May 13, 2010.

Dated: May 13, 2010

                                   By:
                                      Steve Yu
                                      Plaintiff in Pro Se
                                      1025 Esplanade Ave. Apt. 4G
                                      Bronx, NY 10461
                                      (646) 639-3837

Case 07cv5541 (GBD) (MHD)                          AFFIRMATION OF SERVICE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
Steve Yu,

                    Plaintiff,                              07cv5541 (GBD) (MHD)

          -    against -

                                                           AFFIRMATION OF SERVICE

New York City Housing Development Corporation
(HDC), PELLEGRINO MARICONDA, Sued
herein in his Official and Personal Capacity,

                    Defendant(s).
------------------------------------------------------------------------x

Steve Yu, Pro se Plaintiff,

TO THE PRO SE CLERK OF THIS COURT:

          I, Steve Yu, Pro se Plaintiff, declare under penalty of perjury that I have served a
copy of the attached AMENDED COMPLAINT upon Defendant Pellegrina Mariconda via Mr.
Dean Silverberg and Ms. Anna Cohen whose address are Epstein Becker & Green, P.C. 250 Park
Avenue. New York, New York  10177 by overnight mail on May 13, 2010.

Dated: May 13, 2010

                                          By:  _____
                                               Steve Yu
                                               Plaintiff in Pro Se
                                               1025 Esplanade Ave. Apt. 4G
                                               Bronx, NY 10461
                                               (646) 639-3837